```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
PABLO TORRES,
                                                         No. 08-CV-2982
            Petitioner,
                                                         MEMORANDUM AND ORDER
      -against-

UNITED STATES OF AMERICA,

            Respondent.
------------------------------------------------------X
```
TOWNES, United States District Judge:

BACKGROUND

Petitioner Pablo Torres ("Petitioner") pled guilty before this Court to conspiracy to possess with intent to distribute 100 grams or more of heroin. In his plea agreement, the range of imprisonment was estimated to be 70 to 87 months, based on an adjusted offense level of 25 and a criminal history category of III. The Plea Agreement stated:

> the Guidelines estimate . . . is not binding on the [United States Attorney's Office], the Probation Department, or the Court. If the Guidelines offense level advocated by the Office, or determined by the Probation Department or the Court, is different from the estimate, the defendant will not be entitled to withdraw the plea.

(Plea Agreement, Paragraph 4.) The agreement also advised Petitioner that the government would "advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the [Petitioner's] sentence." (Plea Agreement, Paragraph 3.) Further, the government agreed that, "based upon information now known to the Office, it will [] make no motion for an upward departure under the Sentencing Guidelines." (Plea Agreement, Paragraph

1



6.)

At Petitioner's plea hearing, the Court specifically advised Petitioner that "the Court is not bound by this agreement because the Court is not a party to this agreement." (Docket No. 6-1 at 51/88.) The Court further asked Petitioner, "Do you understand that any estimates of the guidelines range provided by the government are not binding on the Court unless the Court says it will be so bound, and I have made no such statement?" (Docket No. 6-1 at 52/88). Petitioner replied in the affirmative.

The Petitioner's Presentence Report ("PSR") calculated his guidelines range to be between 188-235 months, based on an adjusted offense level of 31 and a criminal history category of VI. In response, the government explained to the Court that it had "made two errors" in the plea agreement, which resulted in the disparity between the estimated guidelines range and the guidelines range in the PSR: "First, the criminal history calculation . . . was too low. Second, the government overlooked the operation of the career offender guideline, U.S.G. § 4B1.1." (Docket No. 1 at 16/21.) Based on Petitioner's criminal history, the government advised that it "believes the correct advisory Guidelines range . . . to be the one outlined [in the PSR]." (Docket No. 1 at 16/21). The government added that it "also believes that the court can also consider the Guidelines estimate provided by the government to the defendants at the time of their guilty pleas in its determination of a 'reasonable' sentence." (Docket No. 1 at 16/21.) The government stated that it "takes no position on what sentence would be reasonable in these cases." (Docket No. 1 at 16/21.)

Defense counsel responded to the government's letter, reiterating that the government had agreed that the Court could consider the estimate in the plea agreement and arguing that "a

2

sentence even below that set forth in the plea agreement would be reasonable and appropriate here." (Docket No. 6-1 at 65/88.) Counsel asked the Court to sentence his client to a "modest term of imprisonment" based on Petitioner's drug addiction. (Docket No. 6-1 at 67/88.)

In a letter dated November 7, 2005, defense counsel formally objected to the criminal history calculation in the PSR. (Docket No. 6-1 at 69/88). In a letter response, the government reiterated its earlier statement regarding the PSR, stating that it "believes the guidelines calculation in the [PSR] is correct." (Docket No. 6-1 at 71/88.) The government repeated its earlier statements that the Court could also consider the estimate in the plea agreement and that it "takes no position on what sentence should be imposed." (Docket No. 6-1 at 73/88.)

At Petitioner's sentencing, the government again stated that it did not "have any position on what sentence would be appropriate for the defendant." (Docket No. 6-1 at 80/88.) Defense counsel argued for a "modest term of imprisonment." (Docket No. 6-1 at 80/88.) Counsel noted that "the government's position" was "very commendable" and asked the Court to consider the "mistake" regarding the guidelines estimate in the plea agreement. (Docket No. 6-1 at 80/88.) At no time prior to or at the sentencing hearing did defense counsel argue that the government breached the plea agreement in any way.

Before imposing a sentence, the Court specifically addressed the guidelines estimate in the plea agreement:

> I have considered, in determining what my sentence will be, the fact that the sentencing guidelines estimate provided by the government was incorrect, however, the Court will not impose a sentence of 87 months or below. The government estimate did not take into account the defendant's more than two prior felon[y] conviction[s] for drug traffic[king] offenses. The defendant is, pursuant to the guidelines, a career offender with a criminal history

3

> category of six and not three. The Court is not bound by the
> government's estimate and the defendant entered his plea with
> knowledge that this Court was not a party to that agreement and
> not bound by it.

(Docket No. 6-1 at 82/88.) The Court adopted the PSR and departed downwardly from the guidelines range, sentencing Petitioner to 144 months of imprisonment. The Court noted Petitioner's previous convictions and stated that "[a] longer sentence[ ] is reasonable and necessary to deter you from committing these crimes and frankly to protect the public from further crimes committed by you." (Docket No. 6-1 at 82/88.) Petitioner appealed, and the Second Circuit affirmed the judgment of the Court. *See U.S. v. Torres*, 274 Fed. Appx. 41 (2d Cir. 2008).

In this action pursuant to 28 U.S.C. § 2255, Petitioner claims that he received ineffective assistance of counsel in connection with his sentencing. Petitioner asserts that counsel should have argued that the government breached the plea agreement. He claims that a "Jail-house lawyer" pointed this issue out to him after the Second Circuit rejected his appeal. (Docket No. 1 at 4/21.)

DISCUSSION

Ineffective assistance of counsel claims are assessed under the two-prong test crafted by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). In order "to establish a claim for ineffective assistance of counsel, a petitioner must demonstrate: 1) that his counsel's performance was deficient, and 2) that counsel's deficient performance prejudiced him." *Arakelian v. U.S.*, Nos. 08 Civ. 3224 & 04 Cr. 447, 2009 WL 211486, at *4 (S.D.N.Y. Jan. 28, 2009).

Petitioner claims that defense counsel's representation was deficient because he failed to argue that the government had breached the plea agreement, but this argument is without merit because the government did not breach the agreement. "Pre-trial agreements, including proffer agreements and plea agreements, are interpreted according to principles of contract law. Accordingly, in order to determine whether such an agreement has been breached, courts look to the parties' reasonable understanding of its terms." *U.S. v. Hernandez*, No. 09 CR 625, 2010 WL 2652495, at *3 (S.D.N.Y. Jun. 30, 2010) (internal citations omitted).

The plea agreement itself specifically advised the Petitioner that it merely contained an estimate of the applicable guidelines range. Petitioner was put on notice that the government, the Probation Department, and the Court were not bound by this estimate and that the Petitioner could not withdraw his plea if his sentence was outside of the range set forth in the plea agreement. Before accepting Petitioner's guilty plea, the Court made clear that it was not bound by the estimate in the plea agreement.

After becoming aware of the mistaken estimate in the agreement, the government merely advised the Court of the errors and explained that the PSR was correct. The government made clear numerous times, in letters and at the sentencing hearing, that it was not advocating for any particular sentence, and, in accordance with Paragraph 6 of the plea agreement, it made no motion for any upward departure. In fact, as noted, it invited the Court to consider the erroneous estimate contained in the plea agreement in arriving at a reasonable sentence.

The government's statements to the Court that it erred in calculating the estimate in the plea agreement and that the PSR was correct does not constitute a breach of any provision of the plea agreement. The higher guidelines range of 188-235 months was applicable to Petitioner by

virtue of the career offender guideline set forth in §4B1.1 of the United States Sentencing Guidelines. The government's error in overlooking the applicability of this provision and its later acknowledgment of the mistake to the Court does not amount to a breach of the agreement. *See U.S. v. Denjen*, 101 Fed. Appx. 362 (2d Cir. 2004) (summary order) ("We therefore agree with the government that to hold it to the mistaken estimate in such a case would write out of the plea agreement altogether the language describing the plea calculation as a non-binding estimate and could force the government to adhere to its plea estimates even where those estimates contain obvious legal errors.") (internal quotation marks omitted).

In *United States v. Habbas*, the Second Circuit "reject[ed] [the petitioner's] argument that the government violated his rights under the plea agreement by advocating a higher Guidelines level than it had estimated in the plea agreement." 527 F.3d 266, 270 (2d Cir. 2008). In that case, the government advocated for a four-level upward adjustment set forth in the PSR, despite the fact that the adjustment was not included in the estimate contained in the plea agreement. The government "maintained that its own failure to include the adjustment in the earlier *Pimentel* estimate in the plea agreement had been a 'mistake.'" *Id.* at 270. The Second Circuit recognized that, "in certain circumstances government deviation from its prior estimate could conceivably produce serious unfairness." *Id.* at 271. However, the Court contrasted cases where the government acted in bad faith from situations in which the government has merely made a good faith mistake. The Court held:

> There has been no suggestion that the government in any way acted abusively or in bad faith either in its initial estimate or in the subsequent reevaluation. Nor did the government reverse its position regarding the applicability or effect of a particular provision, upsetting a reasonable reliance by the defendant on the

government's stated position.

*Id.* In contrast, the Court held that it appeared that "the government simply failed to notice the possible applicability of § 3B1.1(a)." *Id.* In this case, there is no indication that the government's error in the estimate set forth in the plea agreement was anything other than a good faith mistake. The government did not breach the plea agreement by apprising the Court of the error. Accordingly, defense counsel's performance was not unconstitutionally deficient.

CONCLUSION

For the foregoing reasons, the petition is denied. The Clerk of Court is directed to close this case.

SO ORDERED.

/s/ SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
August 31, 2010